```
IN THE UNITED STATES DISTRICT COURT
  FOR THE WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```

| | |
|---|---|
| MICHELLE RAMSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-cv-2646-TMP |
| ) | |
| KILOLO KIJAKAZI, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

On September 26, 2022, Michelle Ramsey filed a Complaint seeking judicial review of a social security decision. (ECF No. 1.) Ramsey seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits. For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

**A.   Procedural History**

On January 5, 2018, Ramsey filed an application for social security disability benefits. (ECF No. 18 at PageID 1479.) The initial claim was denied, then denied again upon reconsideration. (Id.) On June 14, 2019, a hearing was conducted by Administrative Law Judge ("ALJ") Scott Shimer, and he issued an unfavorable decision on August 9, 2019. (R. at 132-71, 210-28.) The case was

remanded on May 12, 2020, and the subsequent hearing held on July 9, 2020, resulted in an unfavorable decision for Ramsey by ALJ Scott Shimer. (R. at 95–131, 229-33.) The case was remanded on April 1, 2021, and the third supplemental hearing held on September 13, 2021, resulted in an unfavorable decision for Ramsey by ALJ Shannon Heath. (R. at 45-67, 68-94, 254-59.)

Ramsey filed a Request for Review with Appeals Council, and the Appeals Counsel denied Ramsey's request on September 12, 2022. (Id.) The ALJ's September 2021 decision is the final decision of the Commissioner. (ECF No. 21 at PageID 1501.) Ramsey has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.

**B.    The ALJ's Decision and the Five-Step Analysis**

The ALJ concluded that Ramsey was not disabled using the five-step analysis. (R. at 48.) The five-step sequential analysis is as follows:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Petty v. Comm'r of Soc. Sec., No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *2 (W.D. Tenn. Jan. 30, 2017) (citing Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301 (6th Cir. 1988)).

Ramsey testified that she had worked as a licensed practical nurse without asking or receiving any special accommodations on the job. (R. at 50.) Therefore, the ALJ determined that there was a continuous 12-month period during which Ramsey did not engage in substantial gainful activity. (R. at 51.) The ALJ's remaining discussion addressed the period of time since the alleged onset date in which Ramsey did not engage in substantial gainful activity. (Id.)

The ALJ determined that Ramsey has the following severe impairments: degenerative disc disease; right hip impingement status post arthroscopy; right hip osteoarthritis; fibromyalgia; and left shoulder chondromalacia with labral tear. (Id.) The ALJ determined that Ramsey's hypertension, hyperlipidemia, and thyroid disorder were non-severe as they do not cause more than minimal limitations. (Id.) Additionally, Ramsey's mental impairments of depression and anxiety are non-severe because they do not cause more than minimal limitations to Ramsey's ability to perform basic

- 3 -

mental work activities. (Id.) The ALJ based the decision on the examining and non-examining state agency consultants who opined that Ramsey's mental impairments were non-severe, and found their opinions are persuasive because they were supported by Ramsey's lack of treatment with specialists, presentations during exams, and success with daily activities. (R. at 52.)

The ALJ found that Ramsey had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except that she is limited to:

> lifting and carrying 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and/or walk for 6 hours in an 8-hour workday; occasionally push and pull with right lower extremity; no reaching overhead with left upper extremity, but occasional reaching in other directions with the left upper extremity; occasional reaching overhead with the right upper extremity; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; frequently balance; occasionally stop, kneel, crouch, or crawl; and avoid concentrated exposure to vibrations, unprotected heights, and moving machinery.

(R. at 53.)

The ALJ found that Ramsey's medically determinable impairments could reasonably be expected to cause the symptoms. (R. at 54.) However, Ramsey's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Id.) Ramsey's allegations were not supported by the objective medical evidence and are inconsistent with her admitted

daily activities. (Id.) The record did not indicate that Ramsey had any combination of impairments that made her unable to work for any period of twelve consecutive months. (Id.)

The ALJ determined that the medical evidence did not support additional limitations. (Id.) Regarding the back and hip pain, the ALJ determined that the medical evidence demonstrated that Ramsey had minor symptoms that ultimately returned to normal by February and March of 2020. (Id.) Regarding the neck pain and weakness in her grip, the ALJ reviewed the record, including evidence of lumbar and cervical degenerative disc disease, and concluded that the evidence supported the RFC above and found no support for greater restrictions. (Id.) Regarding Ramsey's shoulder pain, although Ramsey underwent surgical treatment to repair the tear in her left shoulder, the ALJ found that the evidence included within the post-surgical treatment (monitoring, medication, and physical therapy) indicated that Ramsey had improved strength and functioning. (Id.) The ALJ thus concluded that the evidence supports the RFC above and no support for greater restrictions. (R. at 55.)

The ALJ agreed with the medical evidence of fibromyalgia; however, the ALJ determined that the persistence and severity alleged by Ramsey was not consistent with the medical evidence. (R. at 55–56.) The diagnostic testing and neurological testing produced normal results, and the physical exams suggested Ramsey's condition was within normal limits. (R. at 56.) The treatment notes

from 2020 and 2021 revealed stability and consistency in Ramsey's fibromyalgia symptoms. (Id.) The notes indicated that Ramsey's symptoms were helped with medication, and she made no complaints of adverse side effects. (Id.) The ALJ reviewed the evidence, which included the fibromyalgia, but found that the objective evidence supported the RFC above and no support for greater restrictions. (Id.)

The ALJ limited Ramsey to light work with the additional restrictions noted in the RFC above. (Id.) The ALJ determined that Ramsey's reported history could not overcome the objective medical evidence contained in the record, which provided a more "accurate longitudinal history" of Ramsey's conditions. (Id.) The medical evidence failed to provide support for Ramsey's allegations of disabling symptoms and limitations, and the evidence did not support limitations greater than the above listed RFC. (Id.) Additionally, the evidence reflected inconsistencies between Ramsey's allegations, testimony, and the record. (R. at 57.) The evidence of Ramsey's daily activities was inconsistent with her allegations of intensity and persistence of the symptoms. (Id.)

As for medical opinions and prior administrative medical findings, the ALJ noted that it could not defer or given any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. (Id.) The ALJ fully

- 6 -

considered all medical opinions and found the RFC set forth above is more consistent with the medical findings than the medical conclusions provided by Ramsey's experts. (R. at 58.)

The ALJ considered the State agency medical consultant's conclusion and found their opinion to be persuasive. (R. at 57.) The State agency concluded that Ramsey was capable of light work with only four hours of standing and walking in an eight-hour workday, along with additional postural and environmental restrictions, supporting their conclusions by referencing their reviews of the available medical evidence. (Id.) The State agency's conclusions were consistent with the later evidence that Ramsey's ability to ambulate improved; however, they did not have access to the evidence of Ramsey's shoulder problems, which caused manipulative limitations. (Id.) Even so, the ALJ found the State agency's opinions persuasive while also finding that Ramsey needed greater manipulative limitations than they opined due to the shoulder impairment. (Id.)

The ALJ considered Nurse Practitioner ("NP") Ashley Freemans's medical conclusions and found her opinion to be unpersuasive. (Id.) Freeman opined that Ramsey's impairments and symptoms would make it difficult for her to work a full-time job. (Id.) The ALJ found her opinions were vague and without specific limitations or restrictions. (Id.) Additionally, Ramsey admitted

to being able to perform certain daily activities that contradicted Freeman's opinion. (Id.)

The ALJ considered Dr. Joseph Montgomery's medical conclusions and found his opinion to be unpersuasive. (R. at 57-58.) Dr. Montgomery opined that Ramsey could perform a range of light work, but less than two hours of standing and walking in an eight-hour workday with the need to alternate between sitting and standing periodically. (Id.) Additionally, Dr. Montgomery opined that Ramsey was limited to occasional reaching and limited the lower extremities to pushing and pulling. (Id.) Dr. Montgomery supported his opinion by citing Ramsey's history of lumbar stenosis, facet joint syndrome, injection theory, scheduled back surgery, and rotator cuff syndrome. (Id.) However, the ALJ determined that his opinion was not entirely supported by his own examination and was inconsistent with the longitudinal evidence. (Id.) At the time of Dr. Montgomery's examination, Ramsey had mostly recovered from her spine and hip problems and her shoulder problems were just beginning. (Id.) Additionally, Ramsey had just ended a significant period of substantial gainful activity at the time of his statements, which would be inconsistent with the limitations set in Dr. Montgomery's statement. (R. at 58.) Therefore, the ALJ determined that Dr. Montgomery's opinion was extreme and unsupported by his examination regarding Ramsey's hip

- 8 -

and back impairments and Ramsey's multiple normal examinations. (Id.)

In sum, the ALJ determined that Ramsey's allegations and contentions regarding the nature and severity of her impairment-related symptoms and functional limitations were partially consistent with the record. (Id.) However, the allegations concerning severity and functional restrictions were not supported. (Id.) The ALJ considered all the evidence of record and found the RFC set forth above to be appropriate for Ramsey. (Id.)

At the fourth step, the ALJ determined that Ramsey was unable to perform past relevant work as actually or generally performed. (Id.) Ramsey had past relevant work as a licensed practical nurse and a hairstylist. (Id.) This work was substantial gainful activity, was performed long enough for Ramsey to achieve average performance, and was performed within the relevant period. (Id.) Ramsey's RFC would render her unable to meet the physical and mental demands of this type of work. (Id.)

At the fifth step, the ALJ determined that Ramsey could make a successful adjustment to other work based on the testimony of a vocational expert ("VE") and Ramsey's age, education, work experience, and RFC. (R. at 59.) The ALJ considered the testimony of the VE who testified that, given all the non-exertional limitations in the record, Ramsey could perform the requirements

of a job such as mail clerk, folder, and a storage facility rental clerk. (Id.)

On appeal, Ramsey asks the undersigned to revise the ALJ's decision as not supported by substantial evidence. (ECF No. 21 at PageID 1500.) Specifically, Ramsey argues that the ALJ did not offer an adequate justification for finding the opinions of Dr. Montgomery and NP Freeman to be unpersuasive. (ECF No. 18 at PageID 1491-92.)

## II. CONCLUSIONS OF LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decisions made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgement affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance

and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    Dr. Montgomery's and NP Freeman's Opinions**

Ramsey argues that the ALJ ignored the opinions of Dr. Montgomery and NP Freeman and did not provide a sufficient justification for their opinions to be unpersuasive. (ECF No. 18 at PageID 1491.) For the reasons contained herein, substantial evidence supported the ALJ's determination.

Because Ramsey filed this claim on September 26, 2022, the rules in 20 C.F.R. § 416.920c apply in determining whether the ALJ properly considered Dr. Montgomery's and NP Freeman's opinions. See 20 C.F.R. § 416.920c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply."). Under the current regulations, "an ALJ is prohibited from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources.'" Roberts v. Comm'r of Soc. Sec. Admin., No. 3:22-cv-229, 2023 WL 5615359, at *5 (E.D. Tenn. Aug. 11, 2023) (quoting 20 C.F.R. § 404.1520c). Instead, the ALJ was required to consider multiple factors, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. Id. "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (quoting

Pogany v. Berryhill, No. 4:18-cv-04103-VLD, 2019 WL 2870135, at *27 n.7 (D.S.D. July 3, 2019)).

    1.   Dr. Montgomery's Medical Opinions

The ALJ considered the medical record and found Dr. Montgomery's medical opinions to be unpersuasive. (R. at 57.) Dr. Montgomery determined that Ramsey could perform a range of light work, but less than two hours of standing and walking in an eight-hour workday with the need to alternate between sitting and standing periodically. (R. at 57, 1143.) Additionally, he opined that Ramsey was limited to occasional reaching and limited the lower extremities to pushing and pulling. (R. at 57.) His medical opinions were based on Ramsey's history of lumbar stenosis, facet joint syndrome, injection therapy, scheduled back surgery, and rotator cuff syndrome. (Id.) However, the ALJ determined that his opinion was not entirely supported by his examination and was inconsistent with the longitudinal evidence. (Id.) The ALJ reviewed the medical record and determined that Ramsey had mostly recovered from her spine and hip problems, and her shoulder problems were relatively new at the time of Dr. Montgomery's examination. (R. at 57-58, 1142.) Further, Ramsey had just concluded performing substantial gainful activity for a significant period of time prior to the statement made by Dr. Montgomery, rendering Dr. Montgomery's medical opinion

inconsistent with her recorded activity. (R. at 58.) Ramsey presented to multiple exams with normal results. (Id.)

Ramsey contends that the ALJ ignored Dr. Montgomery's medical source opinions, and the record establishes that Ramsey's multiple impairments satisfy the criteria of disability. (ECF No. 18 at PageID 1491.) Ramsey argues that the ALJ failed to evaluate the opinion evidence pursuant to 20 C.F.R. § 404.1520c. (Id. at PageID 1492.) Ramsey cites to the ALJ's first hearing that found Dr. Montgomery's opinion to be generally persuasive and supportive of medical records. (Id. at PageID 1493.) Ultimately, Ramsey urges the Court to consider Lashley and Gentry and reverse the ALJ's unfavorable decision. See Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051 (6th Cir. 1983); Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 730 (6th Cir. 2014).

However, the ALJ considered Dr. Montgomery's testimony and explained that his opinion was not consistent with the records of Ramsey's daily activity and treatment records. (R. at 57–58.) The allegations concerning the severity and functional restrictions were unsupported in his medical report. (R. at 58.) The ALJ properly articulated the supportability and consistency, or rather the lack thereof, of the medical opinions by Dr. Montgomery. See 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (E.D. Tenn. 2019) ("Supportability and consistency will

the most important factors, and usually the only factors the ALJ is required to articulate.")

Additionally, Ramsey's reliance on Lashley and Gentry is misplaced. In Lashley, the Sixth Circuit overturned the ALJ's decision based upon a superficial hearing with an undeveloped record that denied Lashley due process. Lashley, 708 F.2d at 1051. The ALJ had a duty to fully develop the record where the claimant appears with counsel, and the court held that the ALJ failed to fulfill this duty and based the determination on a hearing that lasted only twenty-five minutes and resulted in an eleven-page transcript. Id. at 1051–52. Ramsey had three separate hearings with two different ALJs, resulting in a determination of not disabled. (ECF No. 18 at PageID 1479–80.) Additionally, Ramsey's final hearing lasted forty-two minutes, resulting in a twenty-seven-page transcript. (R. at 94.) Thus, the facts in this case are not analogous to Lashley.

In Gentry, the court explained that the ALJ's decision may be overturned when "the proof of disability is strong, and opposing evidence is lacking in substance . . . or where the proof of disability is overwhelming." 741 F.3d at 730. However, when the record contains conflicting evidence, it is the ALJ's task to resolve the conflicts. Shepard v. Comm'r of Soc. Sec., 705 F. App'x 435, 442 (6th Cir. 2017). The Sixth Circuit has held that it will defer to the ALJ's decision even if there is substantial evidence

in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ. Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 721 (6th Cir. 2012); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The ALJ properly considered the medical records and testimony and determined that Dr. Montgomery's opinion was unpersuasive. The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provided substantial evidence to support the ALJ's decision.

    2.   NP Freeman's Medical Opinions

Additionally, the ALJ considered the medical report and found Freeman's medical opinion to be unpersuasive. (R. at 57.) Freeman determined that Ramsey's impairments and symptoms would make it very difficult for her to work a full-time job. (Id.) However, the ALJ considered her opinion and found it vague and without specific limitations or restrictions. (Id.) Freeman's opinion is inconsistent with Ramsey's admitted daily activities. (Id.) The activities that Ramsey can perform are within the RFC. (Id.) Therefore, Freeman's medical opinions are inconsistent and unpersuasive. (Id.)

Ramsey contends that the ALJ ignored Freeman's medical findings, and the record establishes that Ramsey's multiple impairments satisfy the criteria of disability. (ECF No. 18 at

- 16 -

PageID 1491.) Ramsey argues that the ALJ failed to evaluate the opinion evidence pursuant to 20 C.F.R. § 404.1520c. (Id. at PageID 1492.) However, the ALJ considered Freeman's testimony, explaining that it was inconsistent with Ramsey's testimony regarding her daily activities, and the testimony related to the severity of her condition and her functional restrictions were unsupported. (R. at 57–58.) The undersigned finds that the ALJ adhered to the regulations in considering medical opinion evidence, and that the record provided substantial evidence to support the ALJ's decision.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 14, 2023
Date